UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
DARLENE BISSON,                                    :
                                                   :
                              Plaintiff,           :          06 Civ. 6352 (PAC) (AJP)
                                                   :
             - against -                           :          OPINION & ORDER
                                                   :
THE UNITED NATIONS, THE WORLD FOOD                 :
PROGRAMME & ABC ORGANIZATION,                      :
                                                   :
                              Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

         HONORABLE PAUL A. CROTTY, United States District Judge:

         Pro se plaintiff Darlene Bisson ("Bisson") brought this lawsuit on August 21, 2006

against defendants the United Nations ("UN"), the World Food Programme ("WFP"), and ABC

Organization ("ABC"), an "unknown terrorist and/or insurgent group," alleging they were liable

for injuries she sustained on August 19, 2003 while working for the WFP in Baghdad, Iraq.  The

case was referred to United States Magistrate Judge Andrew J. Peck on January 30, 2007.  On

July 27, 2007, Magistrate Judge Peck issued his Report and Recommendation ("R&R"),

recommending that Bisson's complaint be dismissed as to all defendants.  Magistrate Judge Peck

found that the district court lacked subject matter jurisdiction over both the UN and the WFP,

and that Bisson failed to serve process upon any representatives of ABC. (R&R 32.)  After

requesting and receiving an extension for the filing of objections, Bisson filed her objections

("Objections") to the R&R on August 31, 2007.  On September 13, 2007, the United States

Attorney for the Southern District of New York issued a response to the Objections.[1]  Having

---

[1] The United States Attorney issued a response pursuant to 28 U.S.C. § 517, which provides that "any officer of the
Department of Justice . . . may be sent by the Attorney General to any State or district in the United States to attend
to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to

reviewed both the R&R and the Objections, this Court agrees with Magistrate Judge Peck's

conclusions and dismisses Bisson's claims

## STATEMENT OF FACTS

The facts set forth in the R&R are not in substantial dispute.  Briefly summarized, they

are as follows:

In March 2003, prior to the invasion of Iraq by U.S.-led coalition military forces, the UN

and related agencies withdrew their staff from Iraq. (R&R 2.)  After the fall of Baghdad, the

Office of the Humanitarian Coordinator/Designated Official in Iraq proposed a rapid re-

establishment of the UN presence in Iraq beginning May 1, 2003. (R&R 2.)  As part of this re-

establishment, Bisson, a WFP employee, was sent to Baghdad on temporary duty and arrived on

June 19, 2003. (R&R 2.)  The UN presence was stationed at the Canal Hotel compound in

Baghdad. (R&R 2.)  The Hotel was surrounded by a wire fence and guarded by a platoon of

soldiers. (R&R 2.)  In addition, at the time of the incident in question, construction of a hollow

brick perimeter had been partially completed. (R&R 2.)  Although it was recommended that

blast-resistant film be installed on the building's windows, no such installations had been made.

(R&R 2.)

On August 19, 2003, while Bisson was at the Canal Hotel compound, a flatbed truck

carrying explosives detonated next to the incomplete perimeter wall, killing 22 people and

injuring more than 150, including Bisson. (R&R 2.)  Most of the injuries sustained were caused

by flying glass. (R&R 2.)  Bisson claimed that she sustained the following injuries:  flying-glass

laceration and blunt force injuries to her right thumb; flying-glass lacerations to her left eye,

---

attend to any other interest of the United States."  Here, the United States' interest stemmed from its treaty
obligations to respect the immunities of the UN. (See Objections 1 n.1.)

lower neck area, and both forearms; and the onset of post-traumatic stress disorder, requiring ongoing psychiatric treatment. (R&R 2-3.)

Bisson alleged that the UN and WFP were liable for her injuries.  She claimed, <u>inter alia</u>, that the organizations failed to provide a secure employment environment, to take appropriate security measures to protect against terrorist or insurgent group attacks, and to heed internal policies with regard to staff ceilings and re-entry into dangerous areas. (R&R 3.)  Bisson claimed that the UN was negligent as to both its decision to re-enter Iraq without a proper security assessment and its maintenance of security at the Canal Hotel compound. (R&R 3.)  As to ABC, Bisson claimed that the organization was liable for intentionally planning, conspiring to execute, and executing a terrorist attack on the compound, and for causing numerous deaths and injuries, including to Bisson. (R&R 3.)

Bisson has been reimbursed by the WFP's Staff Compensation Plan (SCP) for medical, hospital, and other expenses directly associated with her injuries and has also been offered compensation in the amount of $104,000 for permanent partial incapacity. (R&R 28 n.23.)  She claims general damages stemming from the defendants' gross negligence and intentionally tortuous conduct. (R&R 3.)

On December 20, 2006, Nicolas Michel ("Michel"), the UN Under-Secretary-General for Legal Affairs, sent a letter to the Deputy Permanent Representative of the United States and to the Court asserting that the UN and WFP were immune from suit. (R&R 4.)  Michel also requested that the United States take appropriate steps to ensure that those immunities were protected. (R&R 4.)  On February 27, 2007, Bisson filed a brief with the Court, arguing that neither the UN nor the WFP were immune from suit. (R&R 4.)  On March 2, 2007, Michel sent a

second letter reasserting immunity for the UN and WFP and once again requesting the United States' involvement in the matter. (R&R 4.) On March 27, 2007, Assistant United States Attorney Serrin Turner submitted a letter response to Bisson's brief. (R&R 4-5.) After a series of letters by both parties, Magistrate Judge Peck issued his R&R, recommending that Bisson's claims be dismissed.

## DISCUSSION

### I.      Standard of Review

According to 28 U.S.C. § 636(b)(1), a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." However, when a timely objection has been made to the magistrate judge's recommendations, the district court must review the contested portions of the recommendation de novo. See Walker v. Hood, 679 F. Supp. 372, 374 (S.D.N.Y. 1988).

As Bisson does not contest dismissal of her claim against ABC, the Court accepts without further review Magistrate Judge Peck's recommendation to dismiss the claim for failure to serve process. Bisson does, however, contest dismissal of her claims against the UN and WFP. The Court therefore reviews those portions of the recommendation de novo.

### II.     The Magistrate Judge's Recommendations

#### A.  Recommendation on the UN Claim

Bisson argued that immunity was inapplicable under both the Convention on the Privileges and Immunities of the United Nations ("UN Convention"), 21 U.S.T. 1418, T.I.A.S.

6900, 1970 WL 104387,[2] and the International Organizations Immunities Act ("IOIA"), 22 U.S.C. § 288 et seq. (1945).

As Magistrate Judge Peck noted, the UN Convention confers on the UN "immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity." UN Convention, art. 2, § 2. (R&R 5-6.) Express waiver of immunity requires "a clear and unambiguous manifestation of the intent to waive." United States v. Chalmers, No. S5 05 CR 59(DC), 2007 WL 624063, at *2 (S.D.N.Y. Feb. 26, 2007) (citation omitted).[3] (R&R 8.) As Magistrate Judge Peck noted, Bisson provided no evidence of express waiver, and, in fact, the UN sent two separate letters expressly invoking its immunity in this case. (R&R 10.)

Bisson argued that, despite the broad grant of immunity, Section 29(a) of the UN Convention should be read as an express waiver of immunity in this case.[4] Pointing to Lutcher S.A. Celulose e Papel v. Inter-American Development Bank, 382 F.2d 454 (D.C. Cir. 1967), Bisson claimed that specific treaty provisions can themselves amount to waiver of immunity (R&R 25.): since § 29(a) conferred a mandatory obligation on the UN to provide an appropriate mode of settlement for her dispute, then the absence of such a mechanism amounted to an express waiver of immunity. (R&R 25-26.) Magistrate Judge Peck rejected this argument. He noted that § 29(a) contained no language effecting an express waiver under any circumstances. (R&R 26.) Even assuming that the UN failed to provide an adequate settlement mechanism, such failure does not constitute waiver because express waiver may not be inferred from conduct. (R&R 26.)

---

[2] The Convention, entered into force by the UN General Assembly on February 13, 1946, was acceded to by the U.S. on April 29, 1970.

[3] The R&R provides a variety of other cases supporting this proposition. (R&R 8-10.)

[4] Section 29(a) reads "The United Nations shall make provisions for appropriate modes of settlement of: (a) disputes arising out of contracts or other disputes of a private law character to which the United Nations in a party . . . ."

Bisson also claimed that her case presents an exception to UN immunity under the IOIA. The IOIA provides that "[i]nternational organizations . . . shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract." 22 U.S.C. § 288a(b).[5]  Bisson pointed to the Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. §§ 1602-1611, as evidence of exceptions to the UN's broad immunity.  Under the FSIA's tort exception, there is no immunity when "money damages are being sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States." 28 U.S.C. § 1605(a)(5).  Under its commercial activity exception, there is no immunity where "the action is based upon a commercial activity carried on in the United States by a foreign state." 28 U.S.C. § 1605(a)(2).

Magistrate Judge Peck determined that because the FSIA only addresses the immunity of "foreign governments," it does not directly govern the UN. (R&R 21.)  He then considered whether the IOIA incorporated the FSIA's exceptions.  He determined it was unnecessary to decide the issue because even if the FSIA's exceptions were incorporated, they would be of no use to Bisson. (R&R 22.)  The tort exception only addresses injury occurring in the U.S., and the commercial activities exception does not encompass international organizations' employment relationships with internal staff. (R&R 20, 22-24.)

---

[5] The IOIA requires that the President designate "through appropriate Executive order" a specific international organization as "being entitled to enjoy the privileges, exemption, and immunities provided in [the IOIA]." 22 U.S.C. § 288.  The United Nations was designated an international organization for these purposes by President Truman in 1946. See Exec. Order No. 9698, 11 Fed. Reg. 1809 (Feb. 19, 1946).

**B. Recommendation on the WFP Claim**

Magistrate Judge Peck recommended that the WFP be considered part of the UN and the

Food and Agricultural Organization ("FAO") and thus subject to those organizations' immunity

under the IOIA.[6] (R&R 16, 19.)  He explained,

> The facts that the WFP acts under the authority of the UN and FAO, members of the UN
> and FAO guide the WFP, and the UN and FAO specifically intended the WFP to be
> considered a "program" of those organizations, lead the Court to conclude that the WFP
> is merely a UN/FAO joint program and not an independent organization.  Accordingly,
> the WFP is entitled to the UN's immunity under the UN Convention and IOIA.

(R&R 16.)

Bisson argued that, like the UN, the WFP waived its immunity by failing to provide an

appropriate mode of settlement for her dispute. (R&R 25-26.)  Specifically, she claimed that the

SCP provided no mechanism for compensating general damages and, thus, the remedies

available under the SCP were inadequate. (R&R 28 n.23.)  Magistrate Judge Peck noted that the

remedies available under the SCP were similar to most state worker's compensation schemes,

which also exclude recovery for pain and suffering. (R&R 28.)  He concluded that Bisson's

dissatisfaction with the compensation policy did not make the policy inadequate and did not

constitute waiver of immunity. (R&R 28-29.)   "[E]mployee dissatisfaction with the efficacy of

the administrative remedy is insufficient to dissolve the immunity of international

organizations." Mendaro v. World Bank, 717 F.2d 610, 616 n.41 (D.C. Cir. 1983). (R&R 29.)

Magistrate Judge Peck concluded that Bisson failed to meet her burden of proving that the WFP

waived immunity. (R&R 29.)

---

[6] The FAO was conferred immunity under the IOIA in 1946 as part of the same executive order that conferred IOIA
immunity on the UN. See Exec. Order No. 9698, 11 Fed. Reg. 1809 (Feb. 19, 1946).  No such executive order,
however, was ever issued with respect to the WFP. (R&R 11, 13.)

III.    **Bisson's Objections**

Bisson filed four objections to Magistrate Judge Peck's R&R:  (1) her suit against the UN and the WFP is not an employment dispute; (2) the SCP is not analogous to U.S. workers' compensation systems; (3) section 29(a) of the UN Convention has no meaning, unless it is construed as an express waiver of immunity; and (4) the position taken by the UN and the WFP is contrary to other treaty obligations imposed on them and publicly promoted by them. None of these objections has merit.

### A.  Objection as to the Employment Dispute

Bisson objects to Magistrate Judge Peck's characterization of her suit as an employment dispute.  She notes that she is not an employee of the UN, but rather of the WFP, and argues that, as a third party with respect to the UN, there is no other available forum or mechanism for her to pursue her claim against the UN, absent this suit.  Bisson specifically criticizes the cases to which Magistrate Judge Peck cites to support his conclusion that an international organization's employment relationship with its internal staff is not "commercial activity" and thus would not fall within the FSIA commercial activity exception to liability.

Bisson's suggests that if the IOIA did in fact incorporate the FSIA commercial activity exception, her claim might have merit.  The Court disagrees.  As Magistrate Judge Peck noted, the FSIA commercial activity exception is limited to commercial activity in the United States or that causes a direct effect in the United States. (R&R 24 n.18.)  Bisson's injury occurred during her WFP employment in Iraq, and, as a resident of Italy, she has not alleged any effect in the United States.  Thus, even assuming arguendo that the exception were incorporated, it would not apply to Bisson.

More importantly, Magistrate Judge Peck's R&R does not rest upon the claim that Bisson's injuries occurred during her WFP employment; it rests upon the UN and WFP's broad immunity under the UN Convention and the organizations' failure to expressly waive that immunity. As Magistrate Judge Peck noted, "What Bisson misunderstands is that her relationship to the defendants is irrelevant. Even if she were not an employee of the WFP or the UN, both organizations would still be immune from suit by her, and § 29(a) still would not constitute an express waiver." (R&R 27 n.22.)

Bisson also raises this objection with regard to the WFP, arguing that her claim extends beyond a mere employment dispute with the WFP to a claim of gross negligence and intentionally tortuous conduct. The argument is based on the same misunderstanding. Regardless of the character of the organization's acts and the context in which they occurred, the WFP, as a part of the UN and entitled to the same organizational immunity, remains immune from Bisson's claims.

### B. Objection as to the Workers Compensation Analogy

Bisson argues that the SCP is not, as Magistrate Judge Peck noted, analogous to U.S. workers' compensation systems because, unlike the SCP, such systems specifically include injuries to employees due to employer fault. As an analogue to her first objection, Bisson argues that the SCP does not provide for remedies stemming from gross negligence or intentionally tortuous conduct and is thus inadequate. Magistrate Judge Peck's analogy to workers' compensation systems is a characterization of those remedies already made available to Bisson. Magistrate Judge Peck concluded that employee dissatisfaction with administrative remedies is insufficient to dissolve organizational immunity. Bisson conceded in her Objections that she is

an employee of the WFP and has failed to point to anything other than personal dissatisfaction with the SCP to support a claim for general damages.

### C.  Objection as to § 29(a) of the UN Convention

Bisson essentially recapitulates the argument made in her brief to the Court regarding § 29(a) of the UN Convention.  She claims that unless § 29(a) is construed as a quid pro quo for the immunities conferred by the rest of the UN Convention, the section is rendered meaningless. Magistrate Judge Peck concluded that § 29(a) contains no language effecting an express waiver under any circumstances and that, even assuming _arguendo_ that the UN failed to provide an adequate settlement mechanism, such failure did not constitute waiver because express waiver may not be inferred from conduct. (R&R 26.)  That conclusion is correct.

### D.  Objection as the UN and WFP's Treaty Obligations

Bisson claims that the UN's and WFP's failure to provide for appropriate modes of settlement denies her rights under the International Covenant on Civil and Political Rights ("ICCPR").  The ICCPR addresses the "right to self-determination," that is, the right to "freely determine [one's] political status and freely pursue [one's] economic, social and cultural development." ICCPR, Art. 1, § 1.  According to the treaty, state parties should "ensure that any person whose rights or freedoms as herein recognized are violated shall have an effective remedy." ICCPR, Art 2, § 3(a)

This objection lacks merit for two reasons.  First, Bisson's right to "self-determination" is not implicated in this case.  She is not seeking redress from political or civil oppression, but rather recovery of damages for allegedly tortuous conduct.  Second, assuming _arguendo_ that this case does implicate the rights addressed by the treaty, the ICCPR does not create any judicially

enforceable individual rights.  When the Senate ratified the ICCPR in 1992, it declared that

"Articles 1 through 27 of the Covenant are not self-executing." 138 Cong. Rec. S4781-01, S4784

(Apr. 2, 1992).  Moreover, "the ICCPR[] came with attached [Reservations, Understandings, and

Declarations] declaring that the ICCPR is not self-executing. This declaration means that the

provisions of the ICCPR do not create a private right of action or separate form of relief

enforceable in United States courts."  Guaylupo-Moya v. Gonzales, 423 F.3d 121, 137 (2d Cir.

2005); see also Igartua De La Rosa v. United States, 32 F.3d 8, 10 n.1 (1st Cir. 1994) (per

curiam), cert. denied, 514 U.S. 1049 (1995) (noting that the ICCPR does not give rise to

"privately enforceable rights under United States law").  Therefore, even if Bisson has rights

under the ICCPR that are implicated here, this Court cannot enforce them.

## CONCLUSION

After reviewing the Objections, this Court agrees with Magistrate Judge Peck's

conclusions as set forth in his R&R.  Bisson's claims against the United Nations, the World Food

Program, and ABC Organization are DISMISSED.  The Clerk is directed to close out this case.


Dated:          New York, New York
                February 11, 2008


                                    SO ORDERED


                                    _____
                                    PAUL A. CROTTY
                                    United States District Judge

Copies To:

Magistrate Judge Andrew J. Peck

Darlene Bisson  (Mail and E-mail)

Via ECF To:

Serrin Andrew Turner
U.S. Attorney's Office, SDNY (Chambers Street)
86 Chambers Street
New York, NY 10007

enforceable individual rights. When the Senate ratified the ICCPR in 1992, it declared that

"Articles 1 through 27 of the Covenant are not self-executing." 138 Cong. Rec. S4781-01, S4784

(Apr. 2, 1992). Moreover, "the ICCPR[] came with attached [Reservations, Understandings, and

Declarations] declaring that the ICCPR is not self-executing. This declaration means that the

provisions of the ICCPR do not create a private right of action or separate form of relief

enforceable in United States courts." Guaylupo-Moya v. Gonzales, 423 F.3d 121, 137 (2d Cir.

2005); see also Igartua De La Rosa v. United States, 32 F.3d 8, 10 n.1 (1st Cir. 1994) (per

curiam), cert. denied, 514 U.S. 1049 (1995) (noting that the ICCPR does not give rise to

"privately enforceable rights under United States law"). Therefore, even if Bisson has rights

under the ICCPR that are implicated here, this Court cannot enforce them.

## CONCLUSION

After reviewing the Objections, this Court agrees with Magistrate Judge Peck's

conclusions as set forth in his R&R. Bisson's claims against the United Nations, the World Food

Program, and ABC Organization are DISMISSED. The Clerk is directed to close out this case.

Dated:     New York, New York
           February 11, 2008

SO ORDERED

PAUL A. CROTTY
United States District Judge

11

Copies To:

Magistrate Judge Andrew J. Peck

Darlene Bisson (Mail and E-mail)

Via ECF To:

Serrin Andrew Turner
U.S. Attorney's Office, SDNY (Chambers Street)
86 Chambers Street
New York, NY 10007